# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**DAVID MILLS,**
**Claimant Below, Petitioner**

**FILED**
August 2, 2017
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 16-0907** (BOR Appeal No. 2051141)
(Claim No. 2013028109)

**ALPHA NATURAL RESOURCES, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner David Mills, by John H. Shumate, Jr, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Alpha Natural Resources, by Timothy E. Huffman, its attorney, filed a timely response.

The issue on appeal is the appropriate amount of permanent partial disability related to the compensable injury. The claims administrator found that Mr. Mills was entitled to a 7% permanent partial disability on October 13, 2014. The Office of Judges affirmed the claims administrator's decision on February 12, 2016. The Board of Review affirmed the Order of the Office of Judges on August 31, 2016. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Mills, a shuttle car operator for Alpha Natural Resources, Inc., injured his back and right leg on March 12, 2013, while loading timbers into a scoop. Mr. Mills stated that he got his right foot caught in between the logs and started to fall. He twisted his right knee and lower back in the process. Mr. Mills reported hearing or feeling a pop when he twisted his knee. Upon examination, the right knee was noted to be swollen and painful to palpation. Mr. Mills had some decreased range of motion as well. The lumbar spine was tender to palpation. An x-ray of the right knee was normal, but an x-ray of the lumbar spine revealed degenerative changes from the

1

L3 to L5-S1 level with narrowing disc spaces and endplate spurring. There was no fracture or spondylolisthesis noted. Mr. Mills was diagnosed with a lumbar sprain/strain and knee sprain.

On March 29, 2013, the claim was approved for sprain of knee/leg, sprain lumbar region, and overexertion and strenuous movements. An MRI performed the same day revealed Grade 2 chondromalacia of the patella, moderate size joint effusion, cartilage erosion and osseous erosion far posterior aspect of the lateral femoral condyle, subchondral cysts within the medial tibial plateau, delicate tear posterior horn medial meniscus, mild meniscocapsular separation, inflammation of the MCL which is on top of a chronic injury, and tricompartmental osteoarthritis. The findings of the cartilage revealed increased intensity within the trochlea and cartilage erosion at the far posterior aspect of the lateral femoral condyle.

Mr. Mills underwent arthroscopic knee surgery on June 7, 2013. The post-operative diagnosis was complex tear, posterior horn of medial meniscus; chondromalacia patella; small tear posterior horn of lateral meniscus; severe lateral patellar tilt; and Grade 3 chondral changes; lateral facet of the patella with minimal changes medial facet of the patella; grade 4 chondral loss, area 8 mm x 1 cm lateral femoral condyle. Mr. Mills tolerated the procedure well and was transferred to recover in stable condition. A January 15, 2014, MRI of the right knee revealed signal abnormality within the posterior horn and body segment of the medial meniscus. However, this can be seen secondary to prior surgery; Grade 3 chondromalacia of the patella; and tricompartmental osteoarthritis.

On May 21, 2014, Mr. Mills underwent a second surgical arthroscopy of the right knee, which was similar to his first knee surgery. The post-operative diagnosis was possible re-tear of posterior horn of medial meniscus; lateral femoral grade 4 cartilage lesion, previously undergone microfracture; full-thickness cartilage loss trochlear groove, area 2 cm x 1 cm; multiple cartilaginous loose bodies, right knee; and complex tear, lateral meniscus right knee.

After the surgeries, Mr. Mills underwent several independent medical evaluations to determine the extent of permanent impairment. Paul Bachwitt, M.D., completed an independent medical evaluation on August 22, 2014. Dr. Bachwitt opined Mr. Mills had reached maximum medical improvement and recommended follow-up visits with S. Brett Whitfield, M.D. Dr. Bachwitt stated Mr. Mills was not working but felt he could perform light duty work and progress to medium duty work over a period of eight weeks. Dr. Bachwitt found that Mr. Mills has had two arthroscopic partial medial and lateral meniscectomies for which he assigned 4% whole person impairment each, for a total of 8% whole person impairment. Dr. Bachwitt noted Mr. Mills had previously been awarded a 2% permanent partial disability for the right knee and therefore, subtracted 2% from his recommendation for a total of 6% whole person impairment. The reporting physician was A.E. Landis, M.D. Dr. Landis noted that Mr. Mills suffered from pre-existing right knee issues. Mr. Mills had several previous injuries to his right knee and underwent right knee arthroscopy in 2008. Mr. Mills also had a pre-existing history of lower back pain and degenerative changes were seen on prior x-rays. Dr. Bachwitt ultimately found 5% impairment for the lumbar spine for a combined total of 11% whole person impairment for all conditions.

2

On September 4, 2014, Rebecca Thaxton, M.D., completed a physician's review report. Dr. Thaxton agreed with the 5% impairment rating given by Dr. Bachwitt as it pertained to the lumbar spine. However, she believed that giving 4% whole person impairment twice for the partial knee surgeries was in effect counting one knee condition twice and was therefore not appropriate.

Dr. Bachwitt issued an addendum to his report on September 16, 2014, to address Dr. Thaxton's review. Dr. Bachwitt believed he was correct in regards to his impairment rating of Mr. Mills's right knee surgeries. However, he noted that as there was some confusion regarding the matter, the issue should be directed to Randall Short, D.O., to make a decision as to whether an individual gets an impairment rating for each surgery when it relates to a knee injury.

Dr. Short completed a physician's review on September 26, 2014. Dr. Short opined that Dr. Bachwitt was incorrect in assessing 4% whole person impairment for each surgery. Dr. Short noted that Mr. Mills underwent the same surgery twice and that combining two different impairments for the same surgery was inappropriate. Based upon Dr. Short's report the claims administrator awarded Mr. Mills a 7% permanent partial disability award.

On January 7, 2015, Saghir Mir, M.D., completed an independent medical evaluation. Dr. Mir diagnosed post-operative arthroscopic debridement of medial and lateral menisci which was operated on twice. He also noted chondroplasty of patellofemoral joint area as well as lateral patellar release for pre-existing subluxating patella and small chondral lesion on lateral femoral condyle. He found Mr. Mills had reached his maximum medical improvement and recommended no further treatment. Dr. Mir calculated 2% whole person impairment for the right knee and 5% whole person impairment for the lumbar spine. He combined the impairment to reach a total of 7% whole person impairment. Because Mr. Mills had already been awarded 7% permanent partial disability he did not recommend any further award.

Yogesh Chand, M.D., completed an independent medical evaluation report of Mr. Mills on June 9, 2015. Dr. Chand's impression was chronic low back pain syndrome and a right knee injury. Dr. Chand noted that Mr. Mills has moderate osteoarthritis of the right knee and has some numbness of the right leg in the S1 nerve root distribution all the way down to the knees. Dr. Chand noted that Dr. Mir did not take into consideration the diagnosis aspect on the range of motion model and Dr. Bachwitt did not assign any impairment for the range of motion stiffness component of the range of motion model. Dr. Chand opined that these categories need to be combined. Dr. Chand found 8% whole person impairment for the lumbosacral spine and 15% whole person impairment for the right knee for a combined total of 19% whole person impairment. He noted Mr. Mills was previously awarded 2% impairment and therefore was entitled to an additional 17% whole person impairment.

On September 22, 2015, Prasadarao Mukkamala, M.D., completed an independent medical evaluation. He concluded that Mr. Mills had reached his maximum medical improvement. Dr. Mukkamala calculated 4% for the right knee, which included 2% impairment he previously received and 5% for the lumbar spine for a combined total of 7% whole person impairment. He noted that because Mr. Mills previously received 7% permanent partial disability

award for this claim, he was fully compensated. Dr. Mukkamala opined that Dr. Chand assigned 15% whole person impairment based upon the utilization of the cane, which Dr. Mukkamala opined was erroneous and improper.

The Office of Judges determined that a 7% permanent partial disability award fully compensated Mr. Mills for his injury and affirmed the claim administrator's decision. The Office of Judges first addressed the level of lumbar spine impairment. The Office of Judges noted that four of the five physicians of record found 5% whole person impairment for the lumbar spine. The only physician that found more impairment was Dr. Chand. The Office of Judges discredited Dr. Chand's evaluation of stiffness because he did not document any of his range of motion measurements for testing when the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993), advise that evaluation reports document this information. The Office of Judges found that the four consistent reports were more credible that Dr. Chand's report. Regarding the impairment of the right knee, the Office of Judges found that Dr. Bachwitt's report was the least reliable out of the four physician reports. Dr. Bachwitt found 8% whole person impairment because he assigned each knee surgery 4% whole person impairment. The Office of Judges found that every other physician besides Dr. Bachwitt concluded that doubling the 4% whole person impairment for the two surgeries was incorrect. Dr. Mukkmala and Dr. Mir did not provide an explanation for why they did not assign each surgery an impairment rating. Dr. Thaxton opined that because the procedures were on the same knee and were partial, that this would be double counting. Dr. Short opined that because the second procedure was the same as the first procedure 4% whole person impairment for both was appropriate. Neither Dr. Thaxton nor Dr. Short cited or referenced the American Medical Association's *Guides* regarding their opinion that Mr. Mills is entitled to a 4% impairment rating despite undergoing two procedures. The Office of Judges noted that Dr. Bachwitt deferred to Dr. Short stating that he should make the decision. The Office of Judges discredited Dr. Chand's finding of 15% whole person impairment for the right knee because he assigned it based upon gait derangement, which the Office of Judges found was caused by pre-existing knee problems and the chondromalacia. The Board of Review adopted the findings of the Office of Judges and affirmed its Order.

After review, we agree with the decision of the Office of Judges as affirmed by the Board of Review. The evidence of record supports an award of 5% permanent partial disability for the lumbar spine component of the injury. Four out of the five rating physicians found that 5% whole person impairment was appropriate. The only physician that found a higher impairment was Dr. Chand. The Office of Judges was correct in discrediting Dr. Chand's evaluation because he did not support his findings with any range of motion measurements or show how he reached his conclusion, which is in contradiction to the rating techniques described in the American Medical Association's *Guides*. A final impairment rating for the right knee of 4% whole person impairment was also supported by the evidence. Dr. Bachwitt was the only physician to find more than 4% whole person impairment and his report states that he would defer to Dr. Short's opinion who found 4% whole person impairment. All of the other physicians of record stated that an extra 4% whole person impairment for the second surgery was incorrect. As a result, both rating decisions were supported by the evidence.

4

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: August 2, 2017**

**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker